UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CASE NO:

JESSE HIEBLER, on behalf of himself and
all others similarly situated,

    Plaintiff(s),

    v.

AK SECURITY SERVICES, LLC,

    Defendant.

_____/

**COLLECTIVE ACTION COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff, JESSE HIEBLER ("Plaintiff"), pursuant to *29 U.S.C. 216(b),* files the following Collective Action Complaint for Damages and Demand for Jury Trial against Defendant, AK SECURITY SERVICES, LLC ("Defendant"), on behalf of himself, and all others similarly situated, and alleges:

**INTRODUCTION**

1. Defendant has misclassified Plaintiff and hundreds of similarly situated security guards as independent contractors in order to avoid federal wage obligations under the Fair Labor Standards Act ("FLSA"). As a result of the intentional misclassification of its employees, Defendant has deprived Plaintiff, and all other similarly situated security guards, of federal overtime compensation during certain periods of their employment. This is a collective action arising under *29 U.S.C. §§ 201-216*, to recover all unpaid wages owed to Plaintiff,

and those similarly situated to Plaintiff, during the course of their employment, and to recover attorney's fees and costs incurred in the prosecution of these claims.

## PARTIES

2. During all times material hereto, Plaintiff was a resident of Alachua County, Florida, over the age of 18 years, and otherwise *sui juris*.

3. During all times material hereto, Defendant, was a Florida limited liability company located and transacting business throughout the State of Florida, including Alachua County, Florida, within the jurisdiction of this Honorable Court.

4. During all times material hereto, Defendant, was vested with ultimate control and decision-making authority over the hiring, firing, pay practices for Defendant, during the relevant time period.

5. Defendant was Plaintiff's employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

## JURISDICTION AND VENUE

6. All acts and omissions giving rise to this dispute took place throughout the entire State of Florida. Defendant operates offices in Fort Lauderdale, Gainesville, Orlando, Tallahassee, and Tampa. Defendant further serves other areas of Florida including Miami, Ocala, Orange Park, St. Augustine, Vero Beach, West Palm Beach, and other cities and suburban locations.

7. Defendant also operates offices in Atlanta, Georgia, and serves other areas throughout the State of Georgia including Alpharetta, Athens, Buford, Conyers, Douglasville, Duluth, Lawrenceville, Marietta, Valdosta, and other cities and suburban locations.

8. Defendant further operates offices in San Antonio, Texas, and serves other areas throughout the State of Texas, including Austin, Houston, Dallas, and other cities and suburban locations.

9. Defendant regularly transacts business in Alachua County, Florida, and required Plaintiff to work in Alachua County, and jurisdiction is therefore proper within the Northern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. §§ 1331* and *1337*.

10. Venue is proper within the Northern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. § 1391(b)*.

## GENERAL ALLEGATIONS

11. Defendant began operating in the State of Florida in 2007.

12. Defendant advertises itself throughout Florida, Georgia, and Texas, as an "East Coast Regional Protection Agency which was established in 2004 and engaged in patrolling and security related services serving states of Florida and Georgia." *See* [www.aksecurityservices.com/about](www.aksecurityservices.com/about).

13. According to its own website, Defendant claims the following:

> A.K. Security is proud to hire our country's veterans and retired public service figures.

*Id.*

14. Defendant emphasizes the fact that it hires military veterans in an attempt to portray itself as a pillar of the community. This is not the case. Defendant has engaged in a consistent pattern of egregiously exploiting its employees (including the military veterans it uses as a marketing ploy) by failing to properly compensate these employees under federal law.

15. The website for Defendant further states the following:

3

> A.K. Security is committed to satisfying our clients and we are constantly looking for ways to improve the personnel experience by continuing to educate in public safety. Our clients include high profile individuals and large management groups who request bodyguard services, HUD Housing projects, Retail security operations, Hotel security, Alarm Responses, as well as ATM responses for one of the country's largest ATM dispatch centers. We also provide TWIC and MARSEC (Maritime Security) certified personnel for ports throughout the states of Florida and Georgia (both cargo and passenger ships).

*Id.*

16. Defendant employs security officers such as Plaintiff throughout Florida, Georgia, and Texas.

17. Defendant provides security services to various clients throughout Florida, Georgia, and Texas, such as Liberty Health Sciences, Verizon Wireless, Gucci, Target, GAP, Apple, Kenneth Cole, Tommy Bahama, TJ Maxx, Sunglass Hut, Sears, Sam's Club, Ross, Red Lobster, Pottery Barn, Express, Disney Store, Victoria's Secret, Kay Jewelers, Olive Garden, Petco, Old Navy, Lucky Brand, Chico's, Aeropostale, Zales, Honeybaked Ham, AutoZone, Harbor Freight Tools, Fossil, Joann Fabric and Craft Stores, Forever 21, Crazy 8, Coach, Calvin Klein, Charming Charlie, BJ's, Burlington Coat Factory, Bed Bath & Beyond, BCBG Maxazria, Bath & Body Works, PetSmart, Abercrombie & Fitch, Hollister, White House | Black Market, Bahama Breeze, True Religion, Michael Kors, Carter's, Claire's, GameStop, Staples, Oakley, Men's Warehouse, Mayors, Lacoste, Joseph A. Bank, Best Buy, J. Crew, Skechers, Gymboree, Famous Footwear, DressBarn, Dick's Sporting Goods, Dillard's, Clark's, Cache, Brooks Brothers, Brighton, Bebe, Barnes & Noble, Banana Republic, Aldo, Ann Taylor, and American Eagle.

18. Defendant is not exempt from coverage under the Fair Labor Standards Act ("FLSA").

19. Plaintiff, and all other similarly situated individuals, are non-exempt employees of the Defendant under the FLSA.

## FLSA COVERAGE

20. Defendant is covered under the FLSA through enterprise coverage, as Defendant was engaged in interstate commerce during all pertinent times in which Plaintiff was employed. More specifically, Defendant's business and Plaintiffs' work for Defendant affected interstate commerce because the materials and goods that Plaintiff used on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.

21. During his employment with Defendant, the Plaintiff, and all other similarly situated employees, handled and worked with various goods and/or materials that have moved through interstate commerce, including, but not limited to: security uniforms, security badges, firearms, telephones, cellular telephones, paper, pens, computer equipment, office furniture, flashlights, and automobiles.

22. Defendant also regularly employed two (2) or more employees for the relevant time period, who handled goods or materials similar to those goods and materials handled by Plaintiff, or regularly and recurrently used the instrumentalities of interstate commerce, or the mails, thus making Defendant's business an enterprise covered by the FLSA.

23. Plaintiff, himself, was regularly and recurrently engaged in using the instrumentalities of commerce such that he is subject to individual coverage under the FLSA.

24. Upon information and belief, Defendant grossed or did business in excess of $500,000.00 during the years of 2017, 2018, 2019, and is expected to gross in excess of $500,000.00 in 2020.

## EMPLOYMENT RELATIONSHIP

25. Plaintiff was hired as a non-exempt employee of Defendant within the meaning of the FLSA and began working as a non-exempt employee for Defendant in July 2019.

26. Defendant maintained control over the day-to-day operations of the company, including the payroll policies, hiring, firing, and scheduling duties.

27. Defendant controlled the company's payroll practices and was vested with ultimate decision-making authority over aspects of Plaintiff's and other similarly situated employees' employment.

28. Defendant treats all of its security officers uniformly throughout the country, in that the economic reality of Plaintiff's, and all other similarly situated employees' relationship with Defendant demonstrate that Plaintiff and putative class members were economically dependent upon Defendant for their work.

29. Defendant controlled the nature and degree of the work performed by Plaintiff and similarly situated individuals.

30. Plaintiff, and similarly situated individuals, did not have an opportunity for profit or loss outside of their employment with Defendant.

31. Plaintiff, and similarly situated individuals, were not required to invest in a substantial amount of equipment or materials required for the job duties and responsibilities. To the contrary, Defendant supplied and provided Plaintiff, and similarly situated individuals, with a uniform that they were required to wear on every single shift Defendant assigned.

32. Plaintiff, and similarly situated individuals, were not required to possess any special skill that would outweigh any other factor in determining they were employees of Defendant as opposed to independent contractors.

33. Defendant's own written policies establish that it maintained a significant degree of control over Plaintiff and similarly situated security guards.

34. Plaintiff, and similarly situated individuals, were employed by Defendant for long periods of time (i.e. more than 6 months) which demonstrated a permanent working relationship.

35. Plaintiff, and similarly situated individuals, performed duties and responsibilities for Defendant that were essential and integral to the Defendant's business.

36. Plaintiff, and similarly situated individuals, were economically dependent upon Defendant during their respective employment periods.

37. Plaintiff and similarly situated individuals, were regularly required to work in excess of forty (40) hours per week without being compensated time-and-a-half their regular hourly rate for this overtime work.

## PLAINTIFF'S WORK FOR DEFENDANT

38. Plaintiff was paid on an hourly basis at the regular hourly rate of $12.50 per hour.

39. During the relevant employment period, Plaintiff was required to work an average of sixty (60) hours per week.

40. Defendant failed to keep or maintain adequate time records for Plaintiff and other similarly situated individuals.

41. Plaintiff worked for Defendant from on or about July 2019, through at least November 2019, when he voluntarily resigned from his employment.

42. Plaintiff was only compensated $12.50 per hour for each of the sixty (60) hours worked each week during his employment.

43. Defendant failed to pay plaintiff, and similarly situated security guards, one-and-one-half times their regular hourly rate for any hours worked in excess of forty (40) in any given workweek.

44. Accordingly, during this initial employment period, Plaintiff (and every security guard throughout the United States) is owed half-time his regular hourly rate in the amount of $6.25 per hour for twenty (20) hours per week for his entire employment period.

45. In total, during the employment period, Plaintiff is entitled to recover $125.00 per week in unliquidated damages.

46. However, Defendant's actions were intentional and/or willful and Plaintiff is therefore entitled to an additional amount of liquidated (double) damages.

47. Overtime payments to Plaintiff and similarly situated individuals remain due and owing.

48. Defendant was either recklessly indifferent as to the overtime requirements under federal law, or, in the alternative, *intentionally violated federal law* so that the Defendant could avoid having to pay Plaintiff his lawful (and hard-earned) wages.

49. During Plaintiff's employment, Defendant maintained full control, direction, and discretion over the work responsibilities, pay practices, schedule, and duties performed by Plaintiff.

50. During the Plaintiff's employment period, Defendant was improperly classifying and compensating Plaintiff, and similarly situated individuals, as independent contractors instead of employees.

51. Plaintiff, and all others similarly situated, were not independent contractors and should not have been compensated as such.

52. Defendant failed to ever cure these violations of federal law and continued to treat and compensate Plaintiff and all other similarly situated individuals as independent contractors thus requiring Plaintiff, and others similarly situated, to incur additional tax penalties from the IRS.

53. As a result of these violations of federal law, Plaintiff has had to retain the undersigned counsel to prosecute these claims and is therefore entitled to an award of reasonable attorney's fees and costs under the FLSA.

### COUNT I - FEDERAL OVERTIME WAGE LAW VIOLATIONS – 29 U.S.C. § 207
### (COLLECTIVE ACTION)

54. Plaintiff re-avers and re-alleges Paragraphs 1 through 53 above, as though fully set forth herein.

55. Plaintiff alleges this action pursuant to the Fair Labor Standards Act, 29 U.S.C. 216(b).

56. Plaintiff, and the putative class, are entitled to: (i) half-time overtime wages; and (iii) liquidated damages pursuant to the FLSA.

57. Plaintiff brings his federal overtime claim against Defendant as a collective action pursuant to 29 U.S.C. 216(b), on behalf of a putative class (the "Class"), defined as follows:

> **All Security Officers hired by Defendant, AK SECURITY SERVICES LLC, in the United States within the past three (3) years, whom were classified as an independent contractor by Defendant and required to work in excess of forty (40) hours per week.**

58. Plaintiff seeks recovery of damages as referenced above and further seeks interest, costs, and attorneys' fees pursuant to 29 U.S.C. 216(b).

WHEREFORE, Plaintiff, JESSE HIEBLER, demands judgment against Defendant, AK SECURITY SERVICES LLC, and respectfully requests that he be awarded the following relief: (a) unliquidated damages to be paid by the Defendant; (b) liquidated damages to be paid by the

Defendant; (c) reasonable attorney's fees and costs to be paid by the Defendant; and any and all such further relief as may be deemed just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, JESSE HIEBLER, hereby requests and demands a trial by jury on all appropriate claims.

**Dated this 1st day of March 2020.**

    Respectfully Submitted,

    **USA EMPLOYMENT LAWYERS –**
    **JORDAN RICHARDS, PLLC**
    805 East Broward Blvd. Suite 301
    Fort Lauderdale, Florida 33301
    Ph: (954) 871-0050
    *Counsel for Plaintiff*

    By: */s/ Jordan Richards*
    JORDAN RICHARDS, ESQUIRE
    Florida Bar No. 108372
    jordan@jordanrichardspllc.com
    melissa@jordanrichadrspllc.com
    jake@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on this 1st of March 2020.

    By: */s/ Jordan Richards, Esquire*
    JORDAN RICHARDS, ESQ.
    Florida Bar No. 108372

## SERVICE LIST: